ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
**PANEL II**

| | | |
|---|---|---|
| **CARLOS R. ROSARIO GONZÁLEZ**<br><br>Recurrente<br><br><br>v.<br><br><br>**DEPARTAMENTO DE SALUD, Background Check Program**<br><br>Recurrido | TA2026AP00068 | **APELACIÓN acogida como REVISIÓN ADMINISTRATIVA**<br>Procedente de la División de Vistas Administrativas del Departamento de Salud<br><br>Caso Núm:<br>**DSCR-PRBGC-2025-10-02-006**<br><br>Sobre: Reconsideración Certificado Ley 300 |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 26 de junio de 2026.

Comparece el señor Carlos R. Rosario González (señor Rosario González o parte recurrente) y solicita la revisión de la Certificación emitida el 20 de agosto de 2025, por el *Puerto Rico Background Check Program* (PRBCP), adscrito al Departamento de Salud. Mediante la misma, se hizo constar que el señor Rosario González no cumple con las disposiciones de la Ley Núm. 300 de 2 de septiembre de 1999, según enmendada, conocida como *Ley de Verificación de Credenciales e Historial Delictivo de Proveedores a Niños, Personas con Impedimentos y Profesionales de la Salud*, 8 LPRA sec. 481 *et. seq.* (Ley Núm. 300-1999).

Examinado el recurso, lo acogemos como una revisión judicial, por ser el vehículo procesal adecuado, en virtud de la Regla 56 del Reglamento del Tribunal de Apelaciones de Puerto Rico, cita *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __

(2025). Sin embargo, se mantendrá el mismo alfanumérico asignado por la Secretaría de este Tribunal por cuestiones de economía procesal.

Por las razones que expondremos a continuación, se confirma la determinación recurrida.

**I.**

Según surge del expediente, en el 2012, el señor Rosario González fue procesado en el estado de Texas por cargos relacionados al uso indebido de una tarjeta de débito (*debit card abuse*). Tras declararse culpable, el tribunal de Denton, Texas aceptó un acuerdo de "*deferred adjudication community supervision*" y determinó no emitir una adjudicación de culpabilidad. El señor Rosario González fue colocado bajo un régimen de supervisión comunitaria por un término de dos (2) años.

El 1 de diciembre de 2014, el tribunal de Texas dictó una orden de "*Discharge and Dismissal*", por medio de la cual dispuso el archivo del caso y declaró que no existiría una convicción en el récord penal del señor Rosario González como consecuencia de ese procedimiento.[1]

En el 2014, el señor Rosario González aprobó la reválida de enfermería, y en el 2015 obtuvo la licencia para ejercer la profesión de enfermero en Puerto Rico, renovada en octubre de 2025. Entre otros trabajos, del 12 de mayo del 2025 al 17 de diciembre de igual año, se desempeñó como enfermero en las facilidades del Sistema de Salud Episcopal San Lucas de Cupey.

Conforme requerido por el Departamento de Recursos Humanos de su patrono, el señor Rosario González solicitó al Departamento de Salud una certificación de credenciales e historial

---

[1] El documento de '*discharge*' establece que "*the best interests of society and the Defendant were served in this cause by deferring further proceedings without an adjudication of guilty*".

delictivo bajo la Ley Núm. 300, *infra.* El 20 de agosto de 2025, el PRBCP, adscrito al Departamento de Salud, expidió una *Certificación.* En esta se dispuso que, tras un análisis de verificación de credenciales e historial delictivo, se certificaba que el señor Rosario González no cumplía con las disposiciones de la Ley Núm. 300 de 2 de septiembre de 1999, según enmendada, y con el Reglamento del Departamento de Salud Núm. 9030.

El 11 de septiembre de 2025, el señor Rosario González dirigió una carta al Departamento de Salud en la cual solicitaba aclaración sobre su historial de antecedentes penales. Alegó que, el caso de 2012 se resolvió a su favor por medio de una adjudicación diferida. Puntualizó que el caso se desestimó sin que se emitiera una condena formal.

El 16 de septiembre de 2025, el Departamento de Salud, por conducto de la directora del PRBCP, contestó la misiva. Explicó que la información recibida a través del *Federal Bureau of Investigation* (FBI), indicaba en su historial delictivo el delito de "*Credit card or debit card abuse elderly*" cometido en el estado de Texas. Añadió que, el Departamento estaba obligado a emitir una certificación conforme a los datos recibidos y a los delitos enumerados en el Artículo 4 de la Ley Núm. 300-1999. Precisó que de los documentos recibidos en apoyo a la solicitud de revisión, no se desprendía evidencia de error que lo moviera a emitir una certificación diferente.

En desacuerdo con la antedicha determinación, el 2 de octubre de 2025, el señor Rosario González presentó un recurso de revisión ante la Oficina de Asesores Legales del Departamento de Salud. Arguyó que, de conformidad con el *Texas Code of Criminal Procedure,* artículo 42A.111(c), la conclusión de un procedimiento de "*deferred adjudication*" mediante una orden de "*discharge and dismissal*" no constituye, en derecho, una convicción ni produce los efectos propios de una sentencia condenatoria. Abundó que, el

propósito del mecanismo es brindar una oportunidad de rehabilitación y reintegración social sin las consecuencias colaterales de una condena o convicción formal. Aseveró que, aunque su expediente reflejaba la existencia de un procedimiento criminal, no fue condenado, y, por tanto, no ostentaba la condición de persona convicta bajo las leyes de Texas.

En armonía con lo anterior, el señor Rosario González alegó que, el PRBCP fundamentó su denegatoria de la certificación concernida en un "*hit*" registral que reflejaba el caso de Texas como si se tratara de una condena, omitiendo el hecho jurídico determinante de que nunca se produjo una adjudicación de culpabilidad, ni se dictó sentencia condenatoria. Manifestó que dicha interpretación desatendía, tanto el texto claro del estatuto texano, como el efecto jurídico de la orden de "*discharge and dismissal*", la cual, lejos de ser una mera formalidad procesal, representaba una determinación final de que cumplió exitosamente con todas las condiciones y que el proceso debía considerarse terminado sin convicción. Ante ello, esbozó que no existía base alguna para tratar el caso de Texas como una condena efectiva que activara la inhabilidad automática como proveedor de servicios de cuidado contemplada en la Ley Núm. 300-1999, ni en el Reglamento Núm. 9030 del Departamento de Salud. Razonó que el Art. 4(A) de la referida Ley, se activa únicamente cuando la persona solicitante aparece registrada como convicta por ciertos delitos y no por meros arrestos, acusaciones, imputaciones o mecanismos alternativos de disposición de casos.

Asimismo, discutió que la frase "el referido Registro incluirá aquellos casos en que la persona se haya declarado culpable en el foro estatal, federal o en cualquier otra jurisdicción de los Estados Unidos", cumple una función meramente descriptiva de lo que contendrá el Registro consultado, y no altera el requisito sustantivo

de que solo las personas con una condición de convictas quedan sujetas a la descalificación automática.  Esgrimió que, pretender lo contrario, equivaldría a extender el alcance de la Ley Núm. 300 más allá de su texto y finalidad, lo cual resultaría incompatible con los principios básicos de legalidad, debido proceso de ley y la propia exposición de motivos de la Ley.  En ese sentido, adujo que la Ley Núm. 300 otorgaba al Departamento de Salud amplias facultades de reglamentación, que, de existir situaciones particulares y luego de realizado un análisis más matizado, se podían conceder variaciones siempre que no se alterara el estándar legal establecido.

Además, el señor Rosario González expresó lo siguiente:

El propio Reglamento 9030, Artículo VI aclara que el Registro que se consulta para emitir la certificación puede contener casos en que la persona "se haya declarado culpable". Reconozco que mi caso aparece en ese Registro bajo esa descripción. No obstante, el que el Registro contenga una referencia a una declaración de culpabilidad no equivale jurídicamente a una condena. En Texas, la declaración de culpabilidad es un requisito procesal para que el tribunal pueda suspender el fallo y colocar a la persona bajo el programa de "*deferred adjudication*". No obstante, el punto clave es que esa declaración no fue seguida de una adjudicación de culpabilidad ni de una sentencia según surge del "*Order of Deferred Adjudication*". El procedimiento se detuvo antes de ese paso y, tras el cumplimiento cabal de mis condiciones, el caso fue desestimado y archivado. Esto me coloca en una situación fundamentalmente distinta a la de una persona convicta.

Cónsono con lo anterior, argumentó que, en la presente causa, el legislador escogió de manera deliberada el término "como convicta" o condena como elemento detonante de la descalificación automática. Ante ello, destacó que no correspondía al Departamento de Salud reinterpretar ese término para incluir disposiciones procesales que no constituían condenas.  En suma, alegó que su solicitud de revisión era indispensable para garantizar el debido proceso de ley y evitar que se le impusieran consecuencias automáticas basadas en un error conceptual: tratar un "*deferred adjudication*" con "*discharge and dismissal*" como si fuera una

condena. Requirió que se emitiera la certificación o, en la alternativa se emitiera una certificación cualificada en la que conste el "*hit*" del caso de Texas, pero se aclare expresamente que no está inhabilitado como proveedor de servicios de cuidado, ni como profesional de la salud por no ser considerada una persona convicta del delito concernido. Ello, considerando que la negativa a expedir dicha certificación lo exponía a la pérdida de su empleo como enfermero manejador de casos en Hospicio and Home Care San Lucas.

Tras varios trámites, el PRBCP del Departamento de Salud incoó una *Moción en Oposición a Solicitud de Revisión*. Arguyó que no tenía discreción para conceder el remedio solicitado por el señor Rosario González. Añadió que, el PRBCP le envió un documento que disponía que el señor Rosario González fue convicto del delito de utilización o posesión ilegal de tarjetas de crédito y tarjetas de débito, por lo que recomendaban una certificación negativa. Alegó que "el señor Rosario fue acusado y se declaró culpable" del referido delito. Puntualizó que no se debía violentar el espíritu de la Ley Núm. 300 y que, Rosario González no reunía los requisitos legales para obtener el certificado de cumplimiento requerido para laborar o administrar instalaciones de cuidado a poblaciones vulnerables.

Así las cosas, el 12 de diciembre de 2025, se presentó el Informe de la Oficial Examinadora, el cual incluyó las siguientes determinaciones de hechos:

1. Luego de examinar la solicitud del Peticionario, Carlos Rubén Rosario González y llevar a cabo los procesos de toma de huellas dactilares e investigación de delitos en las bases de datos estatales y federales, el PRBGC determinó que el Peticionario no cumplía con las disposiciones de la Ley 300-1999.

2. El PRBGC le expidió al Peticionario una certificación de "no cumplimiento".

3. El 11 de septiembre de 2025, el Peticionario presentó ante el PRBCC una solicitud de reconsideración, aclarando el historial de antecedentes penales surgido ante la correspondiente evaluación. El Peticionario se desempeña como enfermero.

4. El 16 de septiembre de 2025, en respuesta a la solicitud de reconsideración del Peticionario, el PRBC emitió la correspondiente comunicación reiterando el incumplimiento con el artículo 4 de la Ley 300, supra, por el haber cometido el delito de Credit Card or Debit Card Abuse, según reflejado en el informe del FBI. El equivalente, de acuerdo con el artículo 4 de la Ley 300-1999, sería la utilización o posesión ilegal de tarjetas de crédito y tarjetas de débito.

5. Posteriormente, el 2 de octubre de 2025, el peticionario presento la solicitud de revisión de autos.

6. De acuerdo con los documentos presentados por el Peticionario, en el año 2012, el Peticionario cometió el delito imputado y en el año 20213 se declaró culpable y el Tribunal del Decimosexto Circuito de Texas ordenó como adjudicación diferida de culpabilidad, que el Peticionario pagará una multa de $750.00 y se colocará bajo supervisión comunitaria por el término de dos (2) años.

7. El Peticionario presentó junto con su solicitud de revisión los siguientes documentos:

   a. Carta suscrita por Lourdes Borres, Directora del Programa PR Background Check de 16 de septiembre de 2025.

   b. Copia de Order Discharging from Community Supervision and Deferred Adjudication, Cause No. F-2012-2376-A, The State of Texas vs Carlos Rubén Rosario.

   c. Copia de Order of Deferred Adjudication, Case No. F-2012-2376-A, The State of Texas vs Carlos Rubén Rosario, The 16' District Court, Denton County, Texas.

   d. Carta de recomendación firmada por Juan C. Santa Rosario, Principal Oficial Médico de CorePlus de fecha 4 de mayo de 2025.

   e. Certificación de empleo por contrato firmada por Christian J. González Silva de la División de Epidemiología e Investigación del Departamento de Salud de fecha de 10 de marzo de 2025.

   f. Carta de recomendación firmada por Nicole M. Muñoz López, Epidemióloga, de fecha 5 de mayo de 2025.

8. Surge del expediente, además, copia del *Plea Bargain Agreement* firmado por el Peticionario el 17 de enero de 2013.

9. EI PRBGC por vía de su representante legal, se opuso a la solicitud del caso de autos alegando, en síntesis, que conforme a las disposiciones claras y categóricas de la Ley Núm. 300-1999, el peticionario Carlos R. Rosario González no reúne los requisitos legales para obtener el certificado de cumplimiento. Alegó, además, la existencia de prueba clara, robusta y convincente para establecer que el Sr. Rosario fue declarado culpable de un delito grave, el cual envuelve depravación moral.

La Oficial Examinadora expresó que el Artículo 4 de la Ley Núm. 300 impone una prohibición absoluta que excluye cualquier tipo de excepción, partiendo de la presunción de reincidencia en la conducta delictiva y sin contemplar la posibilidad de rehabilitación. Añadió que la enumeración de delitos en la ley es clara, específica y vinculante, sin posibilidad de interpretación discrecional por parte del Secretario del Departamento de Salud. Por ende, estableció que el Secretario estaba legalmente impedido de emitir una certificación de cumplimiento a favor del señor Rosario González. Por último, recomendó declarar *No Ha Lugar* la solicitud de reconsideración.

El 18 de diciembre de 2025, el Secretario del Departamento de Salud dictó una *Resolución*, mediante la cual denegó el petitorio de reconsideración del señor Rosario González.

Aun inconforme, el señor Rosario González acude ante nos y le señala al Departamento de Salud la comisión de los siguientes errores:

A. Erró el Secretario de Salud como cuestión de derecho en su interpretación y en la aplicación de la Ley 300 al Recurrente.

B. Erró el Secretario de Salud como cuestión de derecho al tomar en consideración los procedimientos en el estado de Texas para emitir la Certificación recurrida a pesar que la misma expresamente dispone que no constituye una adjudicación y provee el archivo del caso y expresamente declara que no existiría una convicción en el récord penal del Recurrente como consecuencia de ese procedimiento.

C. La actuación del Secretario de Salud al tomar en consideración los procedimientos en el estado de Texas y expedir la certificación recurrida viola las disposiciones de la Constitución del Estado Libre Asociado de Puerto Rico y el derecho del Recurrente a escoger libremente su ocupación, constituye una privación de su derecho de propiedad constitucionalmente garantizado y tiene el efecto de privarlo del derecho a ganarse la vida y su sustento.

El 27 de febrero de 2026, el Departamento de Salud de Puerto Rico, representado por la Oficina del Procurador General, presentó su alegato. Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II.

### A.

Sabido es que los tribunales apelativos están llamados a otorgar amplia deferencia a las decisiones de las agencias administrativas. *Katiria´s Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Vélez v. ARPE*, 167 DPR 684, 693 (2006); *Otero v. Toyota*, 163 DPR 716, 727 (2005). Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus actuaciones un abuso de discreción. El criterio rector es la razonabilidad de la agencia recurrida.[2]

Así, al momento de evaluar una decisión administrativa, los tribunales tomarán en consideración, no solo la especialización y experiencia de la agencia sobre las controversias que tuviera ante sí, sino que también deben distinguir entre cuestiones relacionadas a la interpretación de las leyes —donde los tribunales son los especialistas— y aquellos asuntos propios para la discreción o pericia administrativa. *García Reyes v. Cruz Auto Corp.*, supra, pág. 892. Véase, además, *Super Asphalt v. AFI y otros*, 206 DPR 803, 820 (2021); *Capó Cruz v. Jta. Planificación*, 204 DPR 581 (2020); *Román Ortiz v. OGPe*, 203 DPR 947 (2020).

Al aplicar el criterio de razonabilidad y deferencia, se ha dispuesto por la jurisprudencia que los foros apelativos no deben intervenir con las determinaciones de hechos que las agencias formulan, si las mismas están sostenidas por evidencia sustancial que obre en el expediente administrativo.[3] Bajo dicho escenario, los

---

[2] Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 746 (2012); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

[3] Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Otero v. Toyota*, supra, pág. 728.

foros apelativos deben sostenerlas. Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675. Véase también, *Daco v. Toys "R" Us*, 191 DPR 760, 764 (2014); *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75 (2000). En cuanto a las conclusiones de derecho, la LPAU dispone que: "serán revisables en todos sus aspectos por el tribunal".

Empero, debemos puntualizar que, aunque nuestro más Alto Foro ha expresado en reiteradas ocasiones que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente, dicha consideración por parte de los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025).

En consonancia con lo anterior, el Tribunal Supremo de Puerto Rico, haciendo eco a las palabras del Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo,* 603 US 369 (2024), determinó en *Vázquez v. Consejo de Titulares, supra*, que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales y enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU.

Asimismo, el Tribunal Supremo de Puerto Rico expresó en *Vázquez v. Consejo de Titulares, supra*, que:

> [A]l enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial.

Ahora bien, debido a que las resoluciones de los organismos administrativos gozan de una presunción de legalidad y corrección,

quien las impugne tiene el peso de la prueba, por lo que deberá presentar evidencia suficiente para derrotarla. *Transp. Sonnell v. Jta. Subastas ACT*, 214 DPR 633 (2024); *García Reyes v. Cruz Auto Corp.*, supra, pág. 893; *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). De lo anterior surge claramente que la carga probatoria le corresponde a la parte recurrente. Si incumple, la decisión administrativa deberá ser respetada por el foro apelativo.

**B.**

La Ley Núm. 300-1999 establece como política pública del Gobierno de Puerto Rico la adopción, promoción e implantación de mecanismos de prevención de maltrato o abuso físico o sexual contra niños y envejecientes en instalaciones de cuidado. Asimismo, prohíbe a personas convictas de delitos sexuales violentos, abuso contra menores y ciertos delitos graves y menos graves que impliquen violencia o depravación moral, desempeñarse como proveedores de servicios de cuidado a niños y envejecientes.

Esta Ley provee para que se expida una certificación, por la agencia gubernamental facultada para estos fines, donde se haga constar si el proveedor de estos servicios ha sido convicto de algún delito que ponga en riesgo el bienestar de los niños, ancianos o personas con impedimentos, bajo su custodia. En particular, el Artículo 4 de la mencionada Ley, intitulado Prohibición a proveedores y certificación, 8 LPRA sec. 482, dispone lo siguiente:

(A) Ninguna persona podrá desempeñarse como proveedor de servicios de cuidado, o centros de cuido, [...], así como égidas, casas de salud, auspicio, salud en el hogar, o cualquier otra modalidad que ofrezca servicios a personas de edad avanzada, niños o personas con impedimentos, ni podrá proveer tales servicios en la jurisdicción del Estado Libre Asociado de Puerto Rico, a menos que haya solicitado y obtenido previamente una certificación de que no aparece registrada en el [...], como convicta por ningún delito sexual violento o abuso contra menores, ni por ninguno de los delitos enumerados en este Artículo y relacionados a la Ley Núm. 146-

2012, según enmendada, conocida como el "Código Penal de Puerto Rico", y a consecuencia aparezca con algún tipo de delito o haya presentado credenciales falsos según aparezca en el Informe del Sistema Integrado de Credenciales e Historial Delictivo (SICHDe) adscrito al Departamento de Salud.

[...]

**El referido Registro incluirá aquellos casos en que la persona se haya declarado culpable en el foro estatal, federal o en cualquier otra jurisdicción de Estados Unidos de América, por los delitos enumerados taxativamente, entre los cuales se incluye el de utilización o posesión ilegal de tarjetas de crédito y tarjetas de débito.** *Íd.*

## C.

Recientemente, en *J.H.V. v. Negociado de la Policía de Puerto Rico*, 2025 TSPR 139, resuelto el 12 de diciembre de 2025, el Tribunal Supremo de Puerto Rico analizó, en materia de derecho administrativo, la elegibilidad para obtener una licencia de armas ante la eliminación de delitos del Certificado de Antecedentes Penales. Profundizó sobre la facultad del Negociado de la Policía para considerar las convicciones que fueron eliminadas de un expediente penal y que aparecen en los sistemas de búsqueda con el fin de revocar o denegar una licencia de arma de fuego. En particular, se aclaró si una persona que obtuvo la eliminación de ciertos delitos de su Certificado de Antecedentes Penales adviene automáticamente elegible para obtener una licencia de armas. El Tribunal Supremo de Puerto Rico concluyó que el Negociado de la Policía puede considerar las convicciones que fueron eliminadas de un expediente penal, pero que aún aparecían en los sistemas de búsqueda a los que tiene acceso, con el fin de revocar o denegar una licencia de arma de fuego. La Ley Núm. 254 de 27 de julio de 1974, según enmendada, conocida como *Ley para Autorizar a la Policía de*

*Puerto Rico la Expedición de Certificados de Antecedentes Penales*, 34 LPRA sec. 1725 *et seq.* (Ley Núm. 254) fue aprobada con el propósito de conferirle al Negociado de la Policía el poder expreso de expedir Certificaciones de Antecedentes Penales y promulgar normas y regulaciones relacionadas a ese asunto.

Asimismo, nuestro más alto Foro estableció que:

> [E]l hecho de que una persona presente un Certificado de Antecedentes Penales negativo no abre la puerta automáticamente a que el Negociado de la Policía le conceda una licencia de armas. Esto pues, se trata de tan solo uno de varios criterios que se deben cumplir para que se pueda otorgar dicho permiso. El ente administrativo no tiene discreción para autorizar la posesión de un arma de fuego si, en casos como los presentes, los registros digitales que revisa reflejan que la persona solicitante tiene un expediente con convicciones penales. No tendría sentido que se le requiera al Negociado de la Policía que investigue ciertos archivos si luego no puede considerar el contenido de estos para aprobar o denegar una solicitud de licencia de armas. Por ende, indistintamente de que un antecedente penal aparezca o no en el Certificado provisto a la agencia, el ente administrativo tiene la obligación de denegar una licencia de armas si de los registros investigados se desprende que existen condenas en contra de la persona solicitante.

De otro lado, en *Santiago Cora v. ELA*, 2025 TSPR 44, 215 DPR ____ (2025), el Tribunal Supremo de Puerto Rico determinó que el Estado no está obligado a devolverle a una persona las fotografías de fichaje y las huellas dactilares, luego de que esta extingue una sentencia penal y logra eliminar su condena del Certificado de Antecedentes Penales.

En armonía con lo anterior, en *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 44, 49 (2018), nuestro Tribunal Supremo expuso que, para una determinación en el cauce administrativo de que un poseedor tiene un historial de violencia, conforme la Ley de Armas de Puerto Rico, no necesariamente tiene que ser encontrado culpable en el ámbito penal. En ese caso, concluyó que el Superintendente de la Policía podía utilizar como fundamento para revocar las licencias de armas el criterio de historial de violencia, lo

cual no requería que la persona haya sido encontrada culpable de un delito.

Así, el ente administrativo -encargado de proteger a las personas y a la propiedad y de tomar las medidas preventivas necesarias para evitar la ocurrencia de algún incidente desafortunado- tiene la facultad para tomar en cuenta la existencia de cualquier acto de naturaleza violenta, lo que es distinto al criterio de no tener una condena criminal previa. *J.H.V. v. Negociado de la Policía de Puerto Rico,* citando a *Rolón Martínez v. Supte. Policía,* supra.[4]

### III.

En la presente causa, nos corresponde determinar si el Departamento de Salud actuó razonablemente al denegarle a la parte recurrente el certificado de cumplimiento bajo la Ley Núm. 300-1999, por incumplimiento con los criterios para su expedición.

Por su estrecha relación, discutiremos todos los señalamientos de error en conjunto.

En su escrito, la parte recurrente alega que el Departamento de Salud erró, como cuestión de derecho, en su interpretación y aplicación de la Ley Núm. 300-1999 al tomar en consideración los procedimientos en el estado de Texas para emitir la Certificación solicitada. Añade que, la determinación del PRBCP desatiende y frustra el propósito del propio programa de proveer una oportunidad de rehabilitación y reintegración social sin las consecuencias colaterales de una condena o convicción formal. Subraya que, aunque su expediente refleja un procedimiento criminal, el resultado final no fue una convicción, y, por tanto, no ostenta la condición de persona convicta bajo las leyes de Texas. En ese

---

[4] Citando, además, a Pérez Sánchez, A. L., *Enigmas, lagunas jurídicas y ambiguedades de la nueva ley de armas de Puerto Rico: destapando el velo de la eliminación de convicciones, el historial de violencia y la incapacidad mental,* 18 Rev. Crit. UIPR 111, 129-131 (2022).

sentido, arguye que la figura de '*deferred adjudication*' de Texas no es aplicable como convicción bajo la ley. Razona que, dicho proceso debe excluirse como base de denegación o sanción administrativa en su contra.

De otro lado, la parte recurrente esboza que, como secuela de la actuación del Departamento de Salud, se ha visto privado de ejercer su profesión de enfermero libremente escogida, ganar el sustento para su familia, y se encuentra en riesgo de perder su residencia recientemente adquirida para el disfrute suyo y de su familia, todo ello en violación de las claras disposiciones de la Constitución de Puerto Rico.

Asimismo, la parte recurrente alega que la negativa a expedir la Certificación, sin una aclaración adecuada, colocó a su patrono en una posición de incumplimiento normativo resultando en la terminación de su empleo. Ello, aun cuando jurídicamente no es una persona convicta y, por ende, no está comprendido en las categorías de inhabilidad automática. Aduce que, el PRBCP omitió el hecho jurídico determinante de que en Texas nunca se produjo una adjudicación de culpabilidad, ni se dictó sentencia condenatoria. Menciona que, basado en la referida Certificación del PRBCP, el Departamento de Salud denegó su solicitud de revisión.

La parte recurrente añade que, el listado de delitos de la Ley Núm. 300-1999 no incluye el uso indebido de una tarjeta de crédito ('*debit card abuse*') y, por ende, no le aplica a su caso. Sostiene que no era cuidador, ni de menores, ni de envejecientes y que el delito por el que fue acusado no se refería a abuso contra menores, personas envejecientes o con impedimentos y ciertamente no involucraba delitos sexuales.

Por otro lado, la parte recurrida está de acuerdo con la *Certificación* objetada. Es su parecer que el Departamento de Salud debía emitir una certificación negativa ante los hechos verificados

en el *background check*: la existencia de una admisión de culpabilidad por un delito enumerado en Ley Núm. 300-1999. Lo anterior, aun cuando posteriormente se archivó el caso de Texas y no se dictó una adjudicación final de culpabilidad, y que tal resultado, bajo el Código de Procedimiento Criminal de Texas, no constituye una convicción ni conlleva las consecuencias colaterales de una condena. Acentúa que, ni la Ley Núm. 300-1999, ni su Reglamento, proveen otro recurso alterno ni incorporan otros criterios como la disposición final del caso, la adjudicación diferida de otro estado o el tiempo transcurrido.

Asimismo, la parte recurrida esgrime que, el Departamento de Salud no puede crear una excepción no contemplada por el legislador respecto a los delitos expresamente enumerados en el Artículo 4 de la Ley Núm. 300-1999. En esa dirección, aduce que el legislador simplemente dispuso, sin más, la comisión del delito, establecida mediante una convicción o una alegación de culpabilidad. Verificada su existencia en el *background check*, la parte recurrida expone que, el Departamento no tiene discreción para prescindir de este y a su vez emitir una certificación negativa. Hace hincapié en que lo determinante a la luz del texto de la ley es que, el *background check* arrojó el hallazgo de un delito estipulado en ley y la admisión de culpabilidad de la parte recurrente. Enfatiza en que la Ley Núm. 300-1999 se enfoca en la existencia de la conducta cometida de los delitos enumerados, no en la disposición procesal final del que haya sido objeto el individuo, según el ordenamiento jurídico de otro estado. Así, reitera que, ante el hecho innegable que la parte recurrente fue acusada por un delito enumerado en la Ley aludida y luego se declaró culpable, haya o no resultado dicha alegación en una "convicción" conforme a la definición de la jurisdicción en que se originó, para propósitos de la

Ley Núm. 300-1999, dicha alegación de culpabilidad mandata la emisión de una certificación negativa.

Luego de un puntilloso y sosegado análisis del expediente, así como los argumentos de las partes, concluimos que no incidió la agencia recurrida al emitir la certificación de no cumplimiento impugnada.

No hay controversia respecto a que la parte recurrente se declaró culpable del delito de abuso de tarjeta de débito en el estado de Texas. Tras la finalización exitosa de una supervisión comunitaria, el Tribunal de Denton, Texas no emitió una adjudicación de culpabilidad y posteriormente desestimó el caso. A tales efectos, la parte recurrente no puede catalogarse legalmente como "convicto". A pesar de que la desestimación del caso no se podría utilizar en su contra para la mayoría de las descalificaciones que acarrea una convicción, en situaciones como la de autos, y al menos para efectos administrativos (para propósitos de licencias y de empleo en sectores sensibles), la adjudicación diferida afectó el récord criminal de la parte recurrente. Esto porque la mera declaración de culpabilidad -aunque no exista sentencia final- lo tornó inelegible para obtener la certificación.

El Departamento de Salud emitió una certificación negativa luego de considerar el informe de la Oficial Examinadora y las disposiciones de la Ley Núm. 300-1999. Del informe se desprende que el Secretario de Salud no tenía discreción para expedir la certificación de la parte recurrente dado al proceso criminal acaecido en el estado de Texas.

El Art. 4 de la Ley Núm. 300-1999 es claro al expresar que, si la parte resulta convicta por alguno de los delitos allí enumerados, el Departamento de Salud está impedido de expedir la certificación de cumplimiento. Ahora bien, dicho Artículo también incluye a las personas que se hayan declarado culpables en el foro estatal, federal

o en cualquier otra jurisdicción de Estados Unidos de América. Nótese que el propósito de la Ley Núm. 300-1999 es adoptar, promover e implantar mecanismos de prevención de maltrato o abuso físico o sexual contra niños y envejecientes en instalaciones de cuidado; prohibir a personas convictas de delitos sexuales violentos, abuso contra menores y **ciertos delitos graves y menos graves que impliquen** violencia o **depravación moral, desempeñarse como proveedores de servicios de cuidado a niños y envejecientes**.

Bajo ese marco de ley, el Departamento de Salud está obligado a actuar de manera consistente con la intención legislativa. Es decir, no tiene la facultad de descartar la admisión de culpabilidad de la parte recurrente sobre un delito expresamente enumerado en el Art. 4, independientemente del desenlace procesal, como lo es haber sido beneficiado con un "*deferred adjudication*".

En armonía con lo anterior, toda vez que el récord del caso revela que la parte recurrente fue objeto de denuncia y se declaró culpable del delito de abuso de tarjeta de débito en el estado de Texas, la agencia actuó conforme a derecho. Ello, aun cuando posteriormente el caso fue desestimado tras concedérsele una adjudicación diferida.

Somos del parecer que, en el Artículo 4 de la Ley en cuestión, la Asamblea Legislativa le confirió la facultad al Departamento de Salud para considerar el "historial delictivo" de la persona, sin distinción del resultado del proceso penal, y no exclusivamente si fue convicto por alguno de los delitos incluidos. En otras palabras, sin exigir sentencia, ni convicción final, solo una declaración de culpabilidad. Véase, *Rolón Martínez v. Supte. Policía, supra,* págs. 44, 49.

Adviértase que la determinación del Departamento de Salud no versa sobre la rehabilitación de la parte recurrente, sino más bien

es una limitación que le impone la ley y que no tiene discreción de variar.

En suma, revisadas las conclusiones de derecho del Departamento de Salud en todos sus aspectos, colegimos que la parte recurrente no logró derrotar la presunción de corrección que ostentan las decisiones administrativas, ni tampoco nos persuadió a alejarnos de la norma de deferencia que estas merecen. La decisión de la agencia fue razonable, se dictó bajo el marco doctrinal adecuado y está basada en evidencia sustancial que obra en el expediente del caso. En consecuencia, confirmamos la determinación impugnada.

## IV.

Por los fundamentos antes expuestos, se confirma el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

El Juez Rodríguez Flores concurre y expresa que el derecho sustantivo vigente limita el campo de acción del Departamento de Salud, por lo que entiendo que dicha entidad actuó correctamente. En todo caso, correspondería al Poder Legislativo dentro de sus prerrogativas y mediante legislación, conceder mayor discreción para distinguir situaciones como los hechos del caso de auto.

La Jueza Díaz Rivera disiente sin voto escrito.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones